IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**RANDY SEAN BARNES**                                                    **PLAINTIFF**

vs.                               CIVIL NO. 2:18-cv-02009-PKH-MEF

**NANCY A. BARRYHILL, Commissioner,**                     **DEFENDANT**
**Social Security Administration**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Randy Sean Barnes, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1383(c)(3). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* U.S.C. § 405(g).

### I.      Procedural Background

Plaintiff filed his application for SSI on February 23, 2016, alleging disability since December 1, 2014, due to diabetes, nerve pain in legs, and loss of hearing. (ECF No. 11, pp. 20, 154-160, 196, 286).

Plaintiff's application was denied initially and upon reconsideration. (ECF No. 11, pp. 20, 89, 96). An administrative hearing was held on February 14, 2017, before the Hon. Edward M. Starr. (ECF No. 11, pp. 20, 46-67). Plaintiff and a vocational expert ("VE"), Dr. Larry L. Seifert, testified. (ECF No. 11, p. 46). Plaintiff was represented by counsel, Michael J. Hamby. (ECF No. 11, p. 46).

1

By written decision dated May 25, 2017, the ALJ found Plaintiff had the following severe impairments: type I diabetes mellitus with peripheral neuropathy. (ECF No. 11, p. 22). The ALJ next determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any impairment in the Listing of Impairments. (ECF No. 11, p. 23). After discounting Plaintiff's credibility, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that he can frequently reach, finger, and handle bilaterally, and he can frequently climb, balance, crawl, kneel, stoop, and crouch. (ECF No. 11, p. 23).

The ALJ found that Plaintiff had no past relevant work ("PRW"), but with the assistance of a vocational expert, the ALJ determined Plaintiff could perform the requirements of the representative occupations of: printed circuit board checker (DOT # 726.684-110), with 6,638 jobs in the national economy; ordinance checker (DOT # 737.687-026), with 13,176 jobs in the national economy; and, order clerk (DOT # 209.567-014) with 21,767 jobs in the national economy. (ECF No. 11, p. 28). The ALJ concluded that Plaintiff had not been under a disability as defined by the Act during the relevant period. (ECF No. 11, p. 28).

On December 19, 2017, the Appeals Council denied Plaintiff's request for review. (ECF No. 11, pp. 5-7). Plaintiff subsequently filed this action on January 16, 2018. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 14, 15), and the case is ready for decision.

## II.     Relevant Evidence

The undersigned has conducted a thorough review of the entire record in this case. The complete sets of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

On November 14, 2011, Plaintiff was seen for a consultative exam by Patricia J. Walz, Ph.D. in connection with a previous disability application. (ECF No. 11, pp. 253-257). She observed that he was on time and wearing glasses, but he had no hearing aids. She described him as a heavy-set man, with poor dentition, who wore jeans a wrinkled shirt, and his fingernails were dirty. (ECF No. 11, p. 253). He reported recent problems with listening and understanding communications and loss of memory. *Id*. He reported that "[i]t seems like it is worse, but it is not real bad, and I've always had ADHD." *Id*. He reported no mental health problems, either currently or in the past. He did not have any idea what might be causing his memory problems; and, while he thought his memory was fine, every time somebody told him something he didn't remember. *Id*. He reported no psychiatric hospitalization nor participation in counseling or psychotherapy. *Id*. He reported that he had never taken antidepressants, but that he had taken Ritalin for about a month when he was younger, but it didn't help. *Id*. He reported that he quit halfway through the first semester of 10th grade and had special classes in both English and Science. (ECF No. 11, p. 254). He reported a belief that he had repeated the first grade and may have had speech therapy for a slight speech impediment. *Id*. He reported that he had worked in fast food and a tire store in the past, and occasionally helped his mom clean houses, and he was looking for a job. *Id*. He reported that he had never been fired and had gotten along with his coworkers and bosses. *Id*. Dr. Walz performed mental status tests and opined that Plaintiff's intellectual functioning was thought to be in the 75-85 range. (ECF No. 11, pp. 255-256). Dr. Walz's diagnoses were: attention deficit disorder by history; history of marijuana and alcohol abuse with continued use of alcohol and report of remission of marijuana; and, rule out borderline intellectual functioning. (ECF No. 11, p. 256). Dr. Walz recommended intellectual and achievement testing. *Id.*

On March 7, 2016, Plaintiff had a two-month follow-up appointment with Dr. Suh Niba. (ECF No. 11, pp. 303-306). Dr. Niba noted Plaintiff's prognosis was "good," with the expected outcome of "improve," and that his diabetes, while usually poorly controlled, had improved since his last visit. (ECF No. 11, pp. 305). Dr. Niba also noted that his home blood sugar range was high. *Id*. He listed diabetic neuropathy as an associated symptom, and that Plaintiff reported numbness in both of his hands, feet, and legs. *Id*. Dr. Niba increased Plaintiff's dose of Gabapentin and recommended diet, exercise, avoiding other-the-counter NSAIDS, and weight control. *Id.*

On June 7, 2016, Plaintiff returned to see Dr. Niba. (ECF No. 11, pp. 298-300). Dr. Niba again gave Plaintiff a prognosis of "good," with the expected outcome of "improve," and it was noted that Plaintiff's diabetes, while usually poorly controlled, had improved since his last visit. (ECF No. 11, pp. 294). Diabetic neuropathy was listed as an associated symptom, and Plaintiff reported numbness in both of his hands, feet, and legs. *Id*. Dr. Niba also noted that Plaintiff's home blood sugar range was high. *Id*. Dr. Niba adjusted Plaintiff's medication to address his high blood sugar reading, and diet, exercise, avoiding over-the-counter NSAIDS, and weight control were again recommended. (ECF No. 11, p. 299).

On June 29, 2016, Dr. Niba reviewed Plaintiff's medications and provided a treatment plan for a respiratory infection and acute bronchitis. (ECF No. 11, p. 291-296).

On September 6, 2016, Plaintiff had a follow-up appointment with Dr. Niba. (ECF No. 11, pp. 284-290). Plaintiff's prognosis was once again "good," with the expected outcome of "improve," and it was noted that Plaintiff's diabetes, while usually poorly controlled, had improved since his last visit. (ECF No. 11, pp. 285-286). Plaintiff continued to report numbness in both of his hands, feet, and legs, and diabetic neuropathy was again listed as an associated symptom. *Id*. However, Dr. Niba's physical examination noted continued normal ambulation and

muscle strength.  *Id.*  Plaintiff also reported an earache in his right ear that had been worsening over the past two weeks.  (ECF No. 11, p. 286).  Dr. Niba's treatment plan included continuing medications already prescribed for diabetic polyneuropathy, neuropathic pain, and hyperlipidemia, while adding a prescription of levofloxacin for malignant otitis externa (commonly known as swimmer's ear).  (ECF No. 11, p. 287).

On October 20, 2016, Plaintiff was seen by Dr. Rahim Khoressanizadeh of Sparks Thyroid and Endocrinology for a new patient visit.  (ECF No. 11, pp. 352-356).  Dr. Khoressanizadeh noted that Plaintiff's diabetes was usually poorly controlled, that he was non-compliant with diet, and had not seen an eye doctor or dietitian in the last year.  (ECF No. 11, p. 354).  Dr. Khoressanizadeh also noted diabetic neuropathy as an associated symptom, however, he did not assess or provide a treatment plan for diabetic neuropathy.  (ECF No. 11, p. 356).

On November 18, 2016, Plaintiff had a follow-up visit with Dr. Khoressanizadeh.  (ECF No. 11, pp. 348-352).  Dr. Khoressanizadeh provided an assessment and treatment plan for diabetes mellitus and hyperlipidemia.  (ECF No. 11, pp. 351-352).  Dr. Khoressanizadeh again noted diabetic neuropathy as an associated symptom, but no assessment or treatment plan for diabetic neuropathy was made.  (ECF No. 11, p. 350).

On December 5, 2016, saw Dr. Niba for a follow-up appointment.  (ECF No. 11, pp. 326-330).  He provided the same prognosis as on September 6, 2016, and again noted that his diabetes had improved since his last visit.  *Id*.  Dr. Niba noted a new diagnosis of type I diabetes, instead of type II.  (ECF No. 11, p. 330).

On February 15, 2017, Dr. Khoressanizadeh noted that Plaintiff's diabetes had worsened since his last visit.  (ECF No. 11, p. 334).  Dr. Khoressanizadeh reported a suspicion that Plaintiff

5

was not taking his insulin as prescribed and described him as very non-compliant. (ECF No. 11, p. 335). Dr. Khoressanizadeh adjusted Plaintiff's medications and asked him to return in one week. *Id*.

### III. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. § 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920(a)(4)(v).

## IV.    Discussion

Plaintiff raises the following issues in this appeal: (1) whether the ALJ erred in finding Plaintiff did not have a severe mental impairment; (2) whether the ALJ failed to fully and fairly develop the record; and, (3) whether the ALJ erred in finding that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that he can frequently reach, finger, and handle bilaterally, and he can frequently climb, balance, crawl, kneel, stoop, and crouch. (ECF No. 14, pp. 2-4).

### A.     Mental Impairment

Based upon the Plaintiff's difficulty in attaining a high school level education, and a consultative examination in 2011 with Dr. Patricia Walz, Plaintiff argues the ALJ erred in assessing his severe impairments. (ECF No. 14, p. 2).

At Step Two of the sequential evaluation process, a claimant has the burden of providing evidence of functional limitations in support of his contention of disability. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id*. (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

The ALJ reviewed the November 2011 consultative examination by Dr. Walz and considered it in making his determination as to the Plaintiff's impairments. (ECF No. 11, p. 23). In her assessment, Dr. Walz noted that Plaintiff reported no mental health problems either currently or in the past, but only problems listening and understanding communications and directions and loss of memory, and that Plaintiff had no history of psychiatric treatment or hospitalization. (ECF No. 11, p. 253). Her notes show that Plaintiff reported having always had ADHD, and that he had tried Ritalin for about a month when he was younger, but that he said it didn't help. (*Id*.). Plaintiff said he had been looking for work but could not get work because he had no education. (*Id*.). Regarding adaptive functioning, Dr. Walz reported that Plaintiff's social skills were notable for immaturity, that she believed his intellectual functioning was in the 75-85 range, and that his speed of information processing was variable, but she also reported that his attention and concentration

were adequate and that he persisted well. (ECF No. 11, pp. 23, 256-257). She rendered Axis I diagnoses of Attention Deficit Disorder by history, and a history of marijuana and alcohol abuse with continued use of alcohol and report of remission of marijuana, and an Axis II diagnosis of rule out borderline intellectual functioning. (ECF No. 11, p. 256).

The ALJ considered that there is no evidence of record that Plaintiff ever sought professional mental health treatment or that he takes any medication for ADHD or any other mental impairment. (ECF No. 11, p. 23). The ALJ also reviewed Plaintiff's medical records from his treating physicians which showed that Plaintiff consistently denied experiencing mental symptoms, that he did not attend special education classes, and that he had normal mental status examinations throughout the relevant period. (ECF No. 11, pp. 23, 260, 263, 265, 267-68, 329, 335, 342, 346-47, 351, 355-56).

Substantial evidence supports the ALJ's Step Two finding.

### B.     Development of the Record

Plaintiff next argues the ALJ erred in not obtaining "medical evidence addressing the Plaintiff's intellectual functioning to adequately determine his ability to function in the workplace." (ECF No. 14, p. 2).

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do

9

not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

The need for medical evidence does not necessarily require the Commissioner to produce additional evidence not already within the record. An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). Providing specific medical evidence to support his disability claim is, of course, the Plaintiff's responsibility, and that burden of proof remains on him at all times to prove up his disability and present the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); 20 C.F.R. § 416.912(a) and (c).

Plaintiff's contention that the ALJ erred in not further developing the record with respect to his intellectual functioning is incorrect. (ECF No. 14, pp. 1-3). Plaintiff did not allege that he had borderline intellectual functioning or any other mental impairment in his application documents, but rather this allegation was first raised by his attorney in pre-hearing memorandum which was submitted the day before the hearing. (ECF No. 11, pp. 19, 196, 199-200, 203, 306-209, 224, 226-28, 249-250). At the hearing, Plaintiff's counsel was given an additional 30 days to submit additional medical records, but he did not submit any records concerning Plaintiff's mental health or functioning. (ECF No. 9, pp. 46-67).

The ALJ considered Plaintiff's testimony, the paucity of mental health treatment, the report of consultative medical evaluator Dr. Patricia J. Walz, and the records from Plaintiff's treating physicians in making his determination. (ECF No. 9, p. 23). The ALJ noted that Plaintiff himself did not allege that he had borderline intellectual functioning or any other mental impairment in his application documents or at the hearing. *Id.* Although Dr. Walz's evaluation occurred in

November of 2011, more than five years before the current application date, the ALJ considered Dr. Walz's assessment, including her diagnoses of Attention Deficit Disorder by history, and rule out borderline intellectual functioning. *Id.* As mentioned above, the ALJ noted there was no evidence that Plaintiff sought professional mental health treatment, or that he took any medication prescribed for ADHD or any other mental impairment, during the relevant period. *Id.* He also considered the evidence from Plaintiff's treating physicians showing that Plaintiff consistently denied experiencing any mental symptoms. *Id.*

There was sufficient evidence in the record from which the ALJ could make an informed decision concerning Plaintiff's disability claim. Further, "[r]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995). Plaintiff was given an opportunity to submit additional medical records to support his allegation of a severe mental impairment, but no additional medical evidence was submitted concerning Plaintiff's mental health or functioning. Plaintiff fails to establish any prejudice from the ALJ's decision not to obtain any further medical evidence.

### C.     RFC Determination

Plaintiff argues the ALJ erred in finding that Plaintiff had the RFC to perform sedentary work, except that he can frequently reach, finger and handle bilaterally, and he can frequently climb, balance, crawl, stoop, kneel and crouch. (ECF No. 14, p. 3). Plaintiff argues that this finding is problematic due to Plaintiff's diabetic neuropathy which he testified caused him problems getting around and impeded his ability to sit. (ECF No. 15, p. 4).

A disability claimant has the burden of establishing his RFC. *Vossen v. Astrue*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own

11

descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The ALJ considered the Plaintiff's testimony, disability reports, treatment records, and medical opinion evidence in making his RFC determination. The ALJ first considered the Plaintiff's testimony concerning his pain and functional limitations. Plaintiff testified that he had neuropathy which caused sharp/burning pain in his legs, resulting in difficulty walking, sitting still, and sleeping, and it required him to prop his feet up while sitting. (ECF No. 11, pp. 24, 54-55, 52-56). He also testified that his hands cramp up very badly causing him to be unable to hold objects. (ECF No. 11, pp. 24, 60). The ALJ found these reports of symptoms not entirely consistent with the treatment record and, therefore, accepted them only to the extent they could reasonably be accepted as consistent with the objective medical and other evidence. (ECF No. 11, p. 24).

The ALJ noted that while Plaintiff frequently complained to his doctors of numbness and tingling, the treatment record consistently showed normal ambulation, normal muscle strength and tone, and lack of cyanosis in Plaintiff's extremities. (ECF No. 11, pp. 24-26, 267-268, 286-287). The ALJ noted that while the evidence of record showed a history of poorly controlled type I diabetes mellitus, it also showed a history of non-compliance, which is inconsistent with Plaintiff's

allegations of disabling symptoms associated with that diagnosis. (ECF No. 11, p. 26, 260). The ALJ considered that Plaintiff had been diagnosed with polyneuropathy, but the examination reports did not demonstrate significant objective findings supporting that diagnosis. (ECF No. 11, p. 26). The ALJ also considered the opinion evidence provided by non-examining state medical consultants. (ECF No. 11, p. 27). The ALJ assigned their opinions only some weight as he found Plaintiff's ongoing complaints of upper and lower extremity pain/symptoms warranted greater limitations than those assessed. *Id.*

Upon a careful review of the record, the undersigned finds that the ALJ's RFC determination is supported by substantial evidence.

### IV. Conclusion

For the reasons and upon the authorities discussed above, it is recommended that the ALJ's decision be affirmed and the Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of October 2018.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE